**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

UNIVERSAL ENTERTAINMENT EVENTS, INC. and LORENZO REYES RETANA,

                        Plaintiffs,

v.

CLASSIC AIR CHARTER INC., JAVELIN AIR SERVICES LLC, GO-DAIR INC., DONALD MOSS and JAMES BARTIKOSKI,

                        Defendants.

**COMPLAINT**

**JURY TRIAL DEMANDED**

---

Plaintiffs, Universal Entertainment Events, Inc. ("Universal") and Lorenzo Reyes Retana ("Retana")(Universal and Retana together, "Plaintiffs") by their attorneys, Bowles Liberman & Newman LLP, for their Complaint against defendants Classic Air Charter Inc. ("Classic Air"), Javelin Air Services LLC ("Javelin"), Go-Dair Inc. ("Go-Dair"), Donald Moss ("Moss"), and James Bartikoski ("Bartikoski")(Classic Air, Javelin, Go-Dair, Moss and Bartikoski together, "Defendants"), allege as follows:

## SUMMARY

1. This action arises out of Defendants' fraud, breach of contract and unjust retention of funds in connection with a charter flight arranged for the benefit of Plaintiff's clients. To summarize, Defendants made several false representations to induce Plaintiffs to make payments for the charter of a 240 passenger, international flight for Plaintiffs' clients. In addition, Defendant Classic Air breached the flight charter agreement with Plaintiffs to provide the charter flight. Ultimately no charter flight was provided. This left Plaintiffs' clients stranded abroad without explanation, while Defendants retained substantial funds delivered by Plaintiffs and accepted by Defendants. As a result of

Defendants' fraud, breach of contract and receipt of funds to which it was not entitled, Plaintiffs have suffered both direct and consequential damages in an amount in excess of $500,000.

## THE PARTIES

2. Plaintiff Universal is a corporation formed under the laws of Texas, with a principal place of business at 3333 Allen Parkway, Suite 300, Houston, Texas 77019.

3. Plaintiff Retana is an individual residing in the state of Texas. He is the principal of Universal.

4. Upon information and belief, defendant Classic Air is a corporation formed under the laws of Delaware, with a principal place of business at 460 New York Ave., Huntington, New York 11743.

5. Upon information and belief, defendant Javelin is a limited liability company formed under the laws of Delaware, with a principal place of business at 1000 N West Street, Suite 1200, Wilmington, Delaware 19801. Upon information and belief, the members of Javelin do not reside in Texas.

6. Upon information and belief, defendant Go-Dair is a corporation formed under the laws of Minnesota, with a principal place of business at 1101 Granada Way North, Oakdale, Minnesota 55128.

7. Upon information and belief, defendant Moss is an individual residing in the state of New York. During the events alleged herein, Moss presented himself as a principal/agent of Classic Air.

8. Upon information and belief, defendant Bartikoski is an individual residing in the state of Minnesota. During the events alleged herein, Bartikoski represented himself as a principal/agent of Classic Air, Javelin and Go-Dair.

## JURISDICTION AND VENUE

9. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because all Plaintiffs reside in a jurisdiction diverse to all Defendants.

10. The amount in controversy exceeds $75,000, exclusive of interest and costs.

11. Venue is proper under 28 U.S.C. § 1391 because defendants Classic Air and Moss maintain their principal place of business within the Eastern District of New York, because many of the events giving rise to Plaintiffs' claims occurred within the Eastern District of New York, and because much of the requisite evidence and many of the witnesses needed to prosecute these claims are within the Eastern District of New York.

## MATERIAL FACTUAL ALLEGATIONS

12. Plaintiffs are in the business of planning and arranging luxury travel accommodations for third-party clients around the world, which includes, among other things, chartering flights, booking hotel accommodations, and arranging the means of access to special events.

13. In or about early 2014, plaintiff Retana, through his company Universal, organized a trip to the 2014 World Cup in Brazil for a group of 240 Mexican passengers (the "World Cup Trip").

14. As part of Plaintiffs' responsibilities in organizing the World Cup Trip, Plaintiffs were required to charter a return flight for the 240 passengers, from Recife, Brazil to Guadalajara, Mexico, on June 24, 2014 (the "Flight").

15. Plaintiffs contacted defendant Bartikoski, a broker for charter flights, who represented to Plaintiffs that he would be able to arrange the Flight.

16. Defendant Bartikoski introduced Plaintiffs to defendant Moss and his company Classic Air, and explained that he (Bartikoski) would be working with Moss and Classic Air to arrange the Flight.

17. During the events alleged herein, Bartikoski has acted both individually and as an agent of Classic Air, Javelin and/or Go-Dair.

18. During the events alleged herein, Moss, Bartikoski, and their respective entities acted as and/or represented themselves to Plaintiffs as related parties, partners, and/or agents of one another.

19. For example, Plaintiffs entered into the Charter Agreement with Moss, through Classic Air, but were instructed to make payments to Bartikoski, both personally and through Go-Dair, a limited liability company that, upon information and belief, is owned and/or controlled by Bartikoski.

20. Additionally, Defendants assumed shared responsibility for arranging the Flight and communicated with Plaintiff interchangeably throughout their business dealings.

21. Defendants did not have a plane of suitable size available to accommodate a flight of 240 passengers, so Defendants explained to Plaintiffs that Defendants would subcontract the necessary plane from a reputable, third-party charter company called Dynamic Air Charter, LLC ("Dynamic").

22. Plaintiffs relied on Defendants' representations that they would be able to arrange the Flight though their subcontractor, Dynamic.

23. In or about the first week of June 2014, Plaintiffs entered into a written contract (the "Charter Agreement") with Classic Air, in which Classic Air agreed to charter a plane for the Flight in exchange for Plaintiffs' payment of $305,200. A true and correct copy of the Charter Agreement is attached hereto as **Exhibit 1**.[1]

24. Under the Charter Agreement, the payment was to be made in two parts, first, a $50,000 deposit that was due upon execution and second, the balance of $255,200 that was due by June 15, 2014.

25. Under the Charter Agreement, payment was to be made to Classic Air's bank account via check or wire transfer. However, on the day of the Charter Agreement's execution, Defendants, in an email from Bartikoski, instructed Plaintiffs to make the initial $50,000 payment to a Minnesota bank account belonging to Go-Dair, and, on information and belief, controlled by Bartikoski, and/or Javelin.

26. As Defendants had been working together and had represented themselves as interrelated parties, Plaintiffs followed Bartikoski's instructions and paid to Go-Dair a check, dated June 3, 2014, for $50,000, which, pursuant to the terms of the Charter Agreement, was meant to reserve the aircraft for the Flight from Dynamic.

27. On June 9, 2014, Bartikoski and Javelin emailed Plaintiffs a letter, allegedly from Defendants' subcontractor, Dynamic (the "Dynamic Letter"), purportedly signed by Brian Johnson of Dynamic, stating that formal requests had been made to the National Civil Aviation of Brazil ("ANAC") for a departure slot and to Mexico Civil Air for

---

[1] For reasons that are unclear, there appear to be two executed copies of the Charter Agreement. They appear to be identical, except that one is signed by Retana as Charteree and the other is signed by Universal as Charteree. Both versions are signed by Moss for Classic Air as the Charterer. (Copies of both versions are attached hereto as Exhibit 1) Plaintiffs jointly seek enforcement of the agreement between them and Classic Air.

5

necessary approval for the Flight, and that Dynamic did "not anticipate any issues and expect approval on a timely basis."

28. In or about August 2014 (well after Plaintiffs had made full payment under the Agreement and the scheduled June 24 date for the Flight had passed) Plaintiff Retana had a telephone conversation with Thomas Johnson, who is the Vice President of Dynamic (and the father of Brian Johnson, whose signature purports to be on the Dynamic Letter). In that conversation, Thomas Johnson advised Retana that the Dynamic Letter was not genuine. Specifically, he advised that the letter was not issued or authorized by Dynamic, was not sent by Brian Johnson and did not bear the correct letterhead of Dynamic.

29. On June 18, 2014, following Plaintiffs' receipt of the Dynamic Letter, and well before learning of the letter was not authentic, Plaintiffs made a second payment of $255,000[2] for the outstanding balance of the monies due pursuant to Exhibit A to the Charter Agreement.

30. Pursuant to the instructions of Classic Air, Moss and Bartikoski, Plaintiffs made the second payment by wire transfer to a Minnesota bank account owned by "James Bartikoski DBA Pilot Services LLC."

31. Due to bank issues beyond Plaintiffs' control, the June 18, 2014 wire transfer was unsuccessful and the funds were returned to Plaintiffs.

32. On June 19, 2014 Bartikoski and Javelin forwarded to Retana an email from Moss and Classic Air requesting that the names of passengers on the Flight be entered on a manifest attached to the email. No mention was made in the email of any difficulty in

---

[2] Although $255,200 was due according to the contract, it appears as if Plaintiffs' initial attempt at payment was mistakenly for the slightly lower amount of $255,000.

6

obtaining the charter flight, and the request clearly implies that the charter was moving forward.

33. Shortly after wiring the funds on June 18, Plaintiffs and Defendants became aware of the wire transfer issue and, after the June 19 email, on or about June 23, 2014, Plaintiffs made a second attempt at payment in full satisfaction of the outstanding balance totaling $255,200, in three separate wire transfers of $100,000, $85,000, and $70,200.

34. On or about June 23, the second payment, totaling $255,200, was transferred successfully and accepted by Defendants.

35. Despite the fact that Plaintiffs' final payment was several days overdue under the terms of the Charter Agreement, Defendants accepted payment of the outstanding balance and made oral and written assurances that all of Defendants' obligations under the Charter Agreement would be fulfilled.

36. On June 24, 2014, the day the Flight was scheduled to depart from Brazil, Defendants abruptly informed Plaintiffs that they were unable to charter a plane for Plaintiffs.

37. As a result, Plaintiffs were forced, at their own expense and on extremely short notice, to find and purchase numerous, alternative methods of transportation from Brazil to Mexico for their 240 stranded passengers, during the finale of the 2014 World Cup.

38. Plaintiffs' expenses in acquiring the alternative methods of transportation, not including the damage to Plaintiffs' business and reputation in were in excess of $500,000.

39. Upon Defendants' demand, Defendants returned $190,000 of the monies paid by Plaintiffs to Defendants.

7

40. Despite repeated requests, Defendants refuse to return the remaining balance of $115,200.

## FIRST CLAIM FOR RELIEF
## FRAUD

41. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if set forth in full herein.

42. On June 9, 2014, defendants Bartikoski and Javelin emailed Plaintiffs the Dynamic Letter, stating that Dynamic had applied to the proper Brazilian and Mexican authorities to obtain the necessary departure slot and authorization for the Flight and indicating Dynamic did not anticipate any delays and expected the required approvals.

43. Based on plaintiff Retana's conversation with Thomas Johnson of Dynamic, the Dynamic Letter was not from Dynamic nor was it authorized by Dynamic.

44. The Dynamic Letter makes it appear as though arrangements for the Flight were proceeding.

45. Upon information and belief, Bartikoski and Javelin, with the knowledge and assistance of Moss and Classic Air, sent Plaintiffs the Dynamic Letter with the intent of inducing further payments for the Flight.

46. On June 19, 2014 Bartikoski and Javelin forwarded to Retana an email from Moss and Classic Air requesting that the names of passengers on the Flight be entered on a manifest attached to the email. The email omits any mention of difficulty in obtaining the Flight, and clearly implies that the arrangements for the Flight were moving forward.

47. Upon information and belief, Bartikoski and Javelin, with the knowledge and assistance of Moss and Classic Air, sent Plaintiffs the June 19 email with the intent of inducing further payments for the Flight.

8

48. Plaintiffs justifiably relied on these false representations to their detriment, continuing to make payments to Defendants after receipt of the June 9 Dynamic Letter and the June 19 email.

49. As a result, Plaintiffs suffered damages to be proved at trial, but not less than $500,000, plus damage to Plaintiffs' business reputation, and client relationships.

## SECOND CLAIM FOR RELIEF
## BREACH OF CONTRACT
### (Plaintiffs against Classic Air)

50. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if set forth in full herein.

51. The Charter Agreement was a duly executed, valid and binding contract between Plaintiffs and Classic Air.

52. Plaintiffs fulfilled all of their obligations under the Charter Agreement by rendering payment of the required $305,200.

53. Defendants made no objection to and accepted all payments made by Plaintiffs.

54. Pursuant to the Charter Agreement, Classic Air had an obligation to arrange for the charter of a suitable airplane for the Flight.

55. Classic Air did not charter an airplane pursuant to the Charter Agreement, thereby breaching their obligations pursuant to the Charter Agreement.

56. Upon the discovery of Classic Air's failure to perform under the Charter Agreement, Defendants returned $190,000 of $305,200 to be returned to Plaintiffs.

57. Classic Air still owes Plaintiffs the balance of $115,200 for Classic Air's failure to fulfill its obligations under the Charter Agreement.

58. Plaintiffs also suffered consequential damages from the breach by having to make other flight arrangements for its customers.

59. Plaintiffs have therefore been damaged in an amount to be proved at trial, but not less than $115,200, consequential damages of not less than $500,000 and additional amounts for damage to Plaintiffs' business reputation and client relationships.

### THIRD CLAIM FOR RELIEF
### UNJUST ENRICHMENT

60. Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if set forth in full herein.

61. Plaintiffs entered into the Charter Agreement with Defendants whereby Defendants were responsible for chartering an airplane for the Flight.

62. Pursuant to the Charter Agreement, Plaintiffs paid Defendants a total of $305,200.

63. At Defendants request, the payments were made to various of the Defendants or their agents.

64. Defendants unconditionally accepted these payments.

65. Defendants failed to provide the valued services contemplated in the Charter Agreement.

66. Defendants returned $190,000, but retained $115,200 of the funds paid by Plaintiffs to Defendants.

67. It would be unjust for Defendants to retain the balance of $115,200 and Plaintiffs were damaged in this amount.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

a. Compensatory damages in an amount to be proved at trial, but totaling at least $115,200;

b. Consequential damages in an amount to be proved at trial, but in excess of $500,000;

c. Fraud damages to be proved at trial, but in excess of $500,000;

d. Return of the unjustly retained funds in the amount of $115,2000;

e. Prejudgment and post-judgment interest;

f. Attorneys fees, expenses and costs; and

g. Such other and further relief as this Court deems just and proper.

Dated: March 3, 2015

BOWLES LIBERMAN & NEWMAN LLP
*Attorneys for Plaintiffs Universal Entertainment Events, Inc. and Lorenzo Reyes Retana*

_____
Eric H. Newman (EN1181)
54 W. 21st Street, Suite 1007
New York, New York 10010
T: (646) 374-0352
F: (866) 844-8305
E: enewman@blnlaw.com