UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNIVERSAL ENTERTAINMENT EVENTS,
INC. and LORENZO REYES RETANA,

                Plaintiffs,

  -against-

CLASSIC AIR CHARTER, INC., JAVELIN
AIR SERVICES LLC, DONALD MOSS and
JAMES BARTIKOSKI,

                Defendants.
----------------------------------------------------------X

FILED
CLERK

3/8/2016 10:14 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**ORDER**
15-CV-1104 (SJF) (AKT)

FEUERSTEIN, J.

      Plaintiffs, Universal Entertainment Events, Inc. ("Universal") and Lorenzo Reyes Retana ("Retana," and with Universal, "Plaintiffs"), commenced an action alleging, *inter alia*, breach of contract against defendants Classic Air Charter, Inc. ("Classic Air"), Donald Moss ("Moss," and with Classic Air, the "Moving Defendants"), Javelin Air Services LLC ("Javelin Air"), and James Bartikoski ("Bartikoski," and with Javelin, the "Non-Moving Defendants," and with the Moving Defendants, "Defendants"). DE 1, Compl. The Moving Defendants have moved to dismiss Counts II (aiding and abetting), III (breach of contract), and IV (unjust enrichment) of the amended complaint against Classic Air and Moss. DE 51, Mot. to Dismiss. For the reasons stated below, the motion to dismiss is denied in its entirety.

**I.	BACKGROUND**

   *A.	Factual Background*[1]

Universal and its principal, Retana, arrange luxury travel accommodations for their clients throughout the world. DE 27, Am. Compl., at ¶ 10. In early 2014, Retana organized a trip to the 2014 World Cup in Brazil for two-hundred-and-forty (240) Universal clients. *Id.* at ¶¶ 3, 10. Plaintiffs were responsible for chartering for their clients a June 24, 2014 return flight from Recife, Brazil to Guadalajara, Mexico (the "Flight"). *Id.* at ¶ 12. Plaintiffs contacted Bartikoski, a broker for charter flights, who introduced Plaintiffs to Moss, a "principal/agent" of Classic Air, and "explained that he (Bartikoski) would be working with Moss and Classic Air to arrange the Flight." *Id.* at ¶¶ 6, 14. "Bartikoski has acted both individually and as an agent of Classic Air and Javelin [Air]," and "Moss, Bartikoski, and their respective entities acted as and/or represented themselves to Plaintiffs as related parties, partners, and/or agents of one another." *Id.* at ¶¶ 16-17. Defendants "communicated with Plaintiff[s] interchangeably throughout their business dealings," and "[n]umerous communications from Moss and/or Classic [Air] to Plaintiffs . . . were conveyed through Bartikoski," and vice-versa. *Id.* at ¶¶ 19-21. Defendants later told Plaintiffs that "Defendants would subcontract the necessary plane [for the Flight] from a reputable, third-party charter company called Dynamic Air Charter, LLC ["Dynamic Air"]." *Id.* at ¶ 23.

During the first week of June 2014, Plaintiffs entered into a contract with Classic Air for a chartered plane for June 24, 2014 at a price of three-hundred-and-five-thousand-and-two-

---

[1] As is required on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court accepts all factual allegations in the amended complaint as true and draws all reasonable inferences in Plaintiffs' favor. *Wendell Bail Bonding Co. No. 0811 v. Cuomo*, No. 10-cv-4022, 2011 WL 5546929, at *1 (E.D.N.Y. Nov. 10, 2011). The factual allegations do not constitute findings of fact by this Court. *Pompey v. Imagistics Pitney Bowes Office Sys.*, No. 04-cv-3923, 2005 WL 1320153, at *1 n.1 (E.D.N.Y. May 26, 2005).

hundred dollars ($305,200) (the "Charter Agreement"). *Id.* at ¶ 25; *see* DE 27-1, Ex. A, Charter Ag. Paragraph 7(d) of the Charter Agreement provides that:

> [Classic Air] shall not be responsible or liable for the failure or delay of the charter resulting form [sic] governmental or airport laws, regulations, acts of God, injury, illness, strike, lockouts, riots, civil disobedience, national emergencies, unavailability of fuel, weather, mechanical breakdown, or any other event beyond Charter's [sic] reasonable control. [Reyes] shall also have no liability for consequential or incidental damages of any nature, kind or description: [Classic Air's] and [Reyes's] right to damages for any breach of the terms of this Agreement is, in any event, expressly limited to recovery of damages in an amount not to exceed the amount of the Chater [sic] Fee.

DE 27-1, Ex. A, Charter Ag. at ¶ 7(d). Pursuant to the terms of the Charter Agreement, Plaintiffs were required to make: (i) a fifty-thousand dollar ($50,000) deposit upon execution of the Charter Agreement; and (ii) a second payment of two-hundred-fifty-five-thousand-and-two-hundred dollars ($255,200) by June 15, 2014. *Id.* at ¶ 26. Although the Charter Agreement specified that Plaintiffs' payments must be made to Classic Air's bank account, "Defendants, in an email from Bartikoski, instructed Plaintiffs to make the initial $50,000 deposit to a bank account belonging to 'Go-Dair, LLC' and, on information and belief, controlled by Bartikoski." DE 27, Am. Compl., at ¶ 27. Plaintiffs made their fifty-thousand dollar ($50,000) deposit by check to Go-Dair, LLC on June 3, 2014, when the Charter Agreement was executed. *Id.* at ¶ 28; *see* DE 27-1, Ex. A, Charter Ag., at 3. The check was deposited. DE 27, Am. Compl., at ¶ 28.

The Moving Defendants emailed Dynamic Air, advising them that the Charter Agreement had been signed, and that thirty-thousand dollars ($30,000) of Plaintiffs' fifty-thousand dollar ($50,000) deposit would be forwarded to Dynamic Air. *Id.* at ¶ 29. In a June 3, 2014 email to Dynamic Air, the Moving Defendants requested "'a letter that states permits have been requested and should be approved without any issues by ANAC [Brazil's aviation regulatory agency].

3

That will allow the group [Plaintiffs] to release funds. I can provide letter [sic] but it would be batter [sic] from carrier.'" *Id.* at ¶ 30.

On June 9, 2014, the Non-Moving Defendants sent Plaintiffs an email attaching a letter (the "Dynamic Letter"), allegedly from "Brian Johnson" of Dynamic Air, that stated that "formal requests had been made to the National Civil Aviation of Brazil ('ANAC') for a departure slot and to Mexico Civil Air for necessary approval for the Flight, and that Dynamic [Air] did 'not anticipate any issues and expect approval on a timely basis.'" *Id.* at ¶ 31.

On June 18, 2014, following receipt of the Dynamic Letter and after the deadline for submitting the second payment pursuant to the Charter Agreement, Plaintiffs made a partial second payment of two-hundred-fifty-five-thousand dollars ($255,000) to Go-Dair, LLC. *Id.* at ¶¶ 34-35. The wire transfer payment was unsuccessful, because the bank account was held in the different name of "James Bartikoski DBA Pilot Services LLC." *Id.* at ¶ 36. On June 19, 2014, the Non-Moving Defendants forwarded to Plaintiffs an email from the Moving Defendants requesting the names of the customers for the Flight. *Id.* at ¶ 37. On June 23, 2014, Plaintiffs transferred the full two-hundred-fifty-five-thousand-and-two-hundred dollars ($255,200) to Defendants, and the payment was accepted the same day. *Id.* at ¶¶ 38-39. Plaintiffs also "received oral and written assurances that the [F]light would be arranged." *Id.* at ¶ 40.

On June 24, 2014, the date of the Flight's scheduled departure, Defendants informed Plaintiffs that "they were unable to charter a plane for Plaintiffs." *Id.* at ¶ 41. As a result, Plaintiffs had to "find and purchase numerous, alternative methods of transportation from Brazil to Mexico for their [two-hundred-and-forty] 240 stranded passengers, during the finale of the 2014 World Cup" and accumulated expenses and costs exceeding seventy-five-thousand dollars ($75,000). *Id.* at ¶¶ 42-43.

In August 2014, Retana spoke with Thomas Johnson, the Vice President of Dynamic Air and father of Brian Johnson. *Id.* at ¶ 33. According to Plaintiffs, Thomas Johnson informed Retana that the June 9, 2014 Dynamic Letter was "not genuine," "was not issued or authorized by Dynamic [Air], was not sent or signed by Brian Johnson and did not bear the correct letterhead of Dynamic [Air]." *Id.*

Defendants ultimately returned one-hundred-ninety-thousand dollars ($190,000) of the three-hundred-and-five-thousand-and-two-hundred dollar ($305,200) contractual fee to Plaintiffs. *Id.* at ¶ 44. "Despite repeated requests, Defendants [have refused] to return the remaining balance" of one-hundred-fifteen-thousand-and-two-hundred dollars ($115,200) to Plaintiffs. *Id.* at ¶ 45.

### B. *Procedural History*

On March 3, 2015, Plaintiffs filed an action in this Court seeking damages arising out of the incident described above. DE 1, Compl. On June 1, 2015, Plaintiffs filed an amended complaint raising four (4) causes of action:

- <u>Count I:</u> fraud against the Non-Moving Defendants;
- <u>Count II:</u> aiding and abetting the Non-Moving Defendants' fraud against the Moving Defendants;
- <u>Count III:</u> breach of contract against Classic Air; and
- <u>Count IV:</u> unjust enrichment against Moss, Bartikoski, and Javelin Air.

DE 27, Am. Compl., at 9-11. On August 28, 2015, the Moving Defendants moved to dismiss Count II against the Moving Defendants, Count III against Classic Air, and Count IV against Moss. DE 51, Mot. to Dismiss.

## II. DISCUSSION

### A. *Standard of Review*

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) should be granted if "it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir. 1998). The Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Koppel v. 4987 Corp.,* 167 F.3d 125, 128 (2d Cir.1999). The Court's task "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Levitt v. Bear Stearns & Co.,* 340 F.3d 94, 101 (2d Cir. 2003). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *See Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir. 1995). In deciding the motion to dismiss, the Court may consider documents referred to in the complaint, documents that the plaintiff relied upon in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002).

### B. *Breach of Contract Claim*

"To make out a viable claim for breach of contract a 'complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir. 1996)). Despite not delivering a chartered plane to Plaintiffs as required by the Charter Agreement, the Moving Defendants argue that Classic Air did not breach the

parties' contract. DE 51-2, Mem. of Law in Support of Mot. to Dismiss ("Moving Defs.' Op. Br."), at 22. The Moving Defendants contend that Classic Air's contractual non-performance was excused by paragraph 7(d) of the Charter Agreement that provides that:

> [Classic Air] shall not be responsible or liable for the failure or delay of the charter resulting form [sic] governmental or airport laws, regulations, acts of God, injury, illness, strike, lockouts, riots, civil disobedience, national emergencies, unavailability of fuel, weather, mechanical breakdown, or any other event beyond Charter's [sic] reasonable control.

DE 27-1, Ex. A, Charter Ag., at ¶ 7(d). They contend that because Plaintiffs "admit that Classic Air was '*unable* to charter a plane for Plaintiffs'" in the amended complaint, Classic Air was excused from its obligation to perform pursuant to paragraph 7(d). DE 51-2, Moving Defs.' Op. Br., at 22 (quoting paragraph 41 of the amended complaint). The argument misconstrues the language in the amended complaint and is, in any event, without merit.

Paragraph 41 of the amended complaint states, in its entirety: "On June 24, 2014, the day the Flight was scheduled to depart from Brazil, Defendants abruptly informed Plaintiffs that they were unable to charter a plane for Plaintiffs." DE 27, Am. Compl., at ¶ 41. The language cannot be reasonably interpreted to mean that Plaintiffs "admit[]" that Classic Air was "unable" to charter a plane, or that Classic Air's alleged inability to charter a plane, absent additional facts, falls within the scope of paragraph 7(d).

Plaintiffs have pleaded factual allegations showing that: 1) the parties signed and executed the enforceable Charter Agreement; 2) Plaintiffs paid the full three-hundred-and-five-thousand-and-two-hundred dollar ($305,200.00) contractual fee to Defendants as the Charter Agreement required; 3) Classic Air did not deliver a chartered plane to Plaintiffs on June 24, 2014; and 4) as a result, Plaintiffs incurred damages by paying for replacement flights for their clients and by not being fully refunded for their three-hundred-and-five-thousand-and-two-

7

hundred dollar ($305,200.00) fee.[2]  Plaintiffs have pleaded a breach of contract claim, and the Moving Defendants' motion to dismiss Count III (breach of contract) of the amended complaint is denied.

### C. Aiding and Abetting Claim

Plaintiffs allege that the Moving Defendants aided and abetted the Non-Moving Defendants' commission of fraud, or the delivery of the allegedly fraudulent Dynamic Letter to Plaintiffs.  DE 27, Am. Compl., at ¶¶ 53-56.  The Moving Defendants argue: 1) Plaintiffs have not adequately pleaded an underlying claim of fraud against the Non-Moving Defendants; 2) Plaintiffs have not pleaded an aiding and abetting fraud claim against the Moving Defendants; and 3) the aiding and abetting claim duplicates the breach of contract claim, and the aiding and abetting claim against Classic Air (but not Moss) must be dismissed as a matter of law.  DE 51-2, Moving Defs.' Op. Br., at 11-20.

#### 1. Underlying Fraud Claim against the Non-Moving Defendants

Based upon the factual allegations in the amended complaint, Plaintiffs have adequately pleaded a fraud claim against the Non-Moving Defendants.  "Under New York law, a claim of fraud consists of five [5] elements: '(1) a material misrepresentation or omission of fact; (2) made by defendant with knowledge of its falsity; (3) with intent to defraud; (4) reasonable reliance on the part of plaintiff; and (5) resulting damage to the plaintiff." *United Merchandise Wholesale, Inc. v. IFFCO, Inc.*, 51 F. Supp. 3d 249, 267 (E.D.N.Y. 2014) (quoting *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006)).

---

[2] The Moving Defendants also argue in their Reply Memorandum of Law that Classic Air did not breach the Charter Agreement because Plaintiffs did not identify the specific contractual provision that Classic Air allegedly violated.  DE 51-4, Reply Mem. of Law ("Moving Defs.' Reply Br."), at 16.  The Moving Defendants failed to raise the argument in their Memorandum of Law in Support of their Motion to Dismiss, and therefore the argument is not considered at this stage of the judicial proceedings.

Plaintiffs have alleged that the Dynamic Letter was a fraudulent letter not drafted by either Dynamic or any of its principals. *See* DE 27, Am. Compl., at ¶ 33. Thomas Johnson, the Vice President of Dynamic, informed Plaintiffs that the Dynamic Letter was fraudulent, because it was "not issued or authorized by Dynamic, was not sent or signed by Brian Johnson [of Dynamic] and did not bear the correct letterhead of Dynamic." *Id.* However, the Non-Moving Defendants claimed that the Dynamic Letter was genuine, was signed by Brian Johnson of Dynamic, and indicated that the necessary regulatory approvals for operating the Flight were forthcoming. *Id.* at ¶ 31. Upon receipt of the Dynamic Letter, Plaintiffs reasonably relied upon the Dynamic Letter's representations that the Flight would proceed as scheduled and wire transferred an additional two-hundred-fifty-five-thousand-and-two-hundred dollar ($255,200) payment to Defendants. *Id.* at ¶¶ 34-39. When the Flight was later cancelled, Plaintiffs incurred over seventy-five thousand dollars ($75,000) in damages in securing last-minute, replacement flights for its two-hundred-and-forty (240) customers. Therefore, Plaintiffs have adequately pleaded a claim of fraud against the Non-Moving Defendants.

In addition, Plaintiffs must plead their fraud claim with particularity pursuant to Rule 9(b)'s heightened pleading standard. Fed. R. Civ. P. 9(b); *see United Merchandise Wholesale, Inc.*, 51 F. Supp. 3d at 268. Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To "state a claim with the required particularity, a complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* at 268 (quoting *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84 (2d Cir. 1999)). Concerning

Rule 9(b)'s "conditions of a person's mind" requirement, a plaintiff "must allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Grp., Inc.,* 47 F.3d 47, 52 (2d Cir. 1995). A strong inference of fraud "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp,* 25 F.3d 1124, 1128 (2d Cir. 1994), *superseded by statute on other grounds, as stated in In re Paracelsus Corp. Sec. Litig.,* 61 F. Supp. 2d 591, 595 (S.D. Tex. 1998) (pointing out that the *Shields* standard for an inference of fraudulent intent was superseded as to private securities litigation).

Plaintiffs have alleged facts establishing that, on June 9, 2014, the Non-Moving Defendants sent the allegedly fraudulent Dynamic Letter to Plaintiffs. *See* DE 27, Am. Compl., at ¶¶ 31-33. The facts "give rise to a strong inference of fraudulent intent" of the Non-Moving Defendants to induce Plaintiffs to make a second payment of two-hundred-fifty-five-thousand-and-two-hundred dollars ($255,200) to Defendants. *See Acito*, 47 F.3d at 52. The Non-Moving Defendants had both "motive and opportunity" to send the Dynamic Letter, and there is "strong circumstantial evidence" of their "conscious misbehavior." *Shields*, 25 F.3d at 1128. Plaintiffs have therefore sufficiently pleaded fraud against the Non-Moving Defendants pursuant to both Rule 12(b)(6) and Rule 9(b). *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).

2. <u>Aiding and Abetting Claim against the Moving Defendants</u>

Plaintiffs have also pleaded an aiding and abetting claim against the Moving Defendants that survives Rule 9(b)'s heightened pleading standard. To establish a claim of aiding and abetting fraud, a plaintiff must allege: 1) the existence of a violation by the primary wrongdoer;

2) knowledge of this violation by the aider and abettor; and 3) proof that the aider and abettor substantially assisted in the primary wrong. *Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir. 1983); *see JP Morgan Chase Bank v. Winnick,* 406 F. Supp. 2d 247, 252 (S.D.N.Y. 2005). The plaintiff must establish that the aider and abettor had "actual knowledge" of the alleged wrongdoing. *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 292 (2d Cir. 2006); *see Wight v. BankAmerica Corp.,* 219 F.3d 79, 91 (2d Cir. 2000) (observing that "knowledge of the underlying wrong" is a "required element" pursuant to New York law). Rule 9(b) requires a plaintiff to allege facts that, among other things, give rise to a strong inference that the defendant had actual knowledge of the alleged fraud. "Substantial assistance" exists where: "(1) a defendant affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed; and (2) the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated." *Rosner v. Bank of China*, No. 06-cv-13562, 2008 WL 5416380, at *5 (S.D.N.Y. Dec. 18, 2008).

Plaintiffs have alleged that: (i) Bartikoski "acted both individually and as an agent of Classic Air and Javelin," DE 27, Am. Compl., at ¶ 16; (ii) "Moss, Bartikoski, and their respective entities acted as and/or represented themselves to Plaintiffs as related parties, partners, and/or agents of one another;" *id.* at ¶ 17; (iii) "Plaintiffs entered into the Charter Agreement with Moss, through Classic Air, but were instructed to make payments to Bartikoski," *id.* at ¶ 18; (iv) "[n]umerous communications from Moss and/or Classic [Air] to Plaintiffs . . . were conveyed through Bartikoski," and vice-versa, *id.* at ¶¶ 20-21; (v) after Bartikoski instructed Plaintiffs to make the first fifty-thousand dollar ($50,000) payment to a bank account purportedly controlled by Bartikoski, the Moving Defendants informed Dynamic that the Charter Agreement had been signed and that a portion of the deposit would be forwarded to Dynamic, *id.* at ¶¶ 27,

11

29; (vi) less than one (1) week after the Moving Defendants requested a letter from Dynamic regarding regulatory permits and approvals, the Non-Moving Defendants sent a substantively similar letter to Plaintiffs, *id.* at ¶¶ 30-31; and (vii) after Plaintiffs made their second payment to a bank account purportedly controlled by Bartikoski, the Moving Defendants and Non-Moving Defendants represented to Plaintiffs that the Flight would proceed as planned, *id.* at ¶¶ 34-40.

Those factual allegations give rise to a strong inference that the Moving Defendants and Non-Moving Defendants acted either in a principal-agent relationship or otherwise in a close relationship, and that the Moving Defendants had actual knowledge of, and substantially assisted in, the Non-Moving Defendants' alleged fraud against Plaintiffs. The amended complaint contains specific factual allegations that six (6) days after the *Moving* Defendants requested a letter from Dynamic, the *Non-Moving* Defendants sent the substantively similar letter, the allegedly fraudulent Dynamic Letter, to Plaintiffs. Moreover, although Plaintiffs made their payments to Bartikoski, performance was required from the Moving Defendants. It can be "strongly inferred" from the allegations that the Moving Defendants and Non-Moving Defendants share knowledge and information, and that they "communicated with Plaintiff[s] interchangeably throughout their business dealings." DE 27, Am. Compl., at ¶ 19. Although the precise relationship between the Moving Defendants and Non-Moving Defendants is as yet unclear, that is one of the purposes of discovery. Therefore, Plaintiffs have presented facts that "strongly infer" that the Non-Moving Defendants engaged in fraudulent misconduct against Plaintiffs; the Moving Defendants had actual knowledge of the Non-Moving Defendants' alleged fraud; and the Moving Defendants substantially assisted the Non-Moving Defendants in the fraud. As a result, Plaintiffs have alleged an aiding and abetting claim against the Moving Defendants that meets Rule 9(b)'s heightened pleading standard.

### 3. Aiding and Abetting Claim does not Duplicate Breach of Contract Claim

The Moving Defendants also allege that the aiding and abetting claim against Classic Air, but not Moss, must be dismissed pursuant to Rule 12(b)(6), because it duplicates Plaintiffs' breach of contract claim against Classic Air. DE 51-2, Moving Defs.' Op. Br., at 15. "Under New York law, a cause of action sounding in fraud cannot be maintained when the only fraud charged relates to a breach of contract." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837, F. Supp. 2d 162, 197 (S.D.N.Y. 2011). However, there are three (3) exceptions where fraud and aiding and abetting claims may be pleaded in conjunction with a breach of contract claim. "[I]n such a situation, a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone v. Recovery Credit Servs., Inc.*, 98 F.3d 1, 20 (2d Cir. 1996). Pursuant to the first exception, the plaintiff must "show a legal duty separate from the duty to perform under the contract," such as a "fiduciary relationship between the parties." *Sony Music Entm't Inc. v. Robison*, No. 01-cv-6415, 2002 WL 272406, at *2 (S.D.N.Y. Feb. 26, 2002), *reconsideration granted on other grounds*, 2002 WL 550967 (S.D.N.Y. Apr. 11, 2002). Pursuant to the second exception, the plaintiff must raise factual allegations "collateral and extraneous" to the express terms of the contract. *Id.* Claims of fraud "can be supported by a false statement of present fact, or by a false statement of future intent which concerns a matter collateral to a contract between the parties." *Id.* (quoting *Ohio Players, Inc. v. Polygram Records, Inc.*, No. 99-cv-33, 2000 WL 1616999, at *2 (S.D.N.Y. Oct. 29, 2000)). A promise consistent with the express terms of a contract cannot constitute fraud. *Id.* (citing *John Paul Mitchell Sys. v. Quality King Distributors*, No. 99-cv-

9905, 2001 WL 910405, at *5 (S.D.N.Y. Aug. 13, 2001)). Pursuant to the third exception, the plaintiff must allege special damages that are "unrecoverable as contract damages" and that are the proximate result of the defendant's fraudulent misrepresentations. *DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 327 (S.D.N.Y. 2002). The special damages also "must reasonably be anticipated at the time the contract was made." *Id.* (citing *Bibeault v. Advanced Health Corp.*, No. 97-cv-6026, 2002 WL 24305, at *6 (S.D.N.Y. Jan. 8, 2002)). Special damages are "specially required expenses intended to eliminate a condition which the contracting party had promised either to eliminate or not to bring about." *Id.*

In the absence of a fiduciary relationship between Plaintiffs and the Moving Defendants, the first exception cannot be satisfied. However, Plaintiffs have met the second exception by alleging that the Non-Moving Defendants made false representations to Plaintiffs through the Dynamic Letter. DE 27, Am. Compl., at ¶ 31; DE 51-3, Pls.' Mem. of Law in Opp'n to Mot. to Dismiss ("Pl.'s Ans. Br."), at 11. Promises to secure all required governmental permits and approvals in advance of the Flight, and that such permits and approvals would be obtained in a timely manner, as stated in the Dynamic Letter, are not express terms of the Charter Agreement. The Non-Moving Defendants' promises of regulatory approvals are extraneous to the terms of the Charter Agreement between Plaintiffs and Classic Air and do not duplicate the breach of contract claim against Classic Air.

Plaintiffs have also alleged special damages that preclude their aiding and abetting claim from being subsumed within their breach of contract claim. DE 51-3, Pls.' Ans. Br., at 12. Plaintiffs have raised factual allegations that they suffered substantial damages exceeding the contractual fee of three-hundred-and-five-thousand-and-two-hundred-dollars ($305,200.00), based upon their payment for the cost of replacement flights for their clients. DE 27, Am.

Compl., at ¶¶ 41-43. Paragraph 7(d) of the Charter Agreement expressly precludes recovery for consequential damages, which would constitute special damages recoverable in an aiding and abetting claim. *See* DE 27-1, Ex. A, Charter Ag., at ¶ 7(d). Thus, Plaintiffs have established that their aiding and abetting claim against Classic Air is not duplicative of their breach of contract claim against the same defendant. As a result, the Moving Defendants' motion to dismiss Count II (aiding and abetting) pursuant to Rule 12(b)(6) for failure to state a claim, and Rule 9(b) for failure to plead the claim with particularity, is denied.

### D. *Unjust Enrichment Claim*

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefited; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.,* 448 F.3d 573, 586 (2d Cir. 2006). "The 'essence' of such a claim 'is that one party has received money or a benefit at the expense of another.'" *Kaye v. Grossman,* 202 F.3d 611, 616 (2d Cir. 2000) (quoting *City of Syracuse v. R.A.C. Holding, Inc.,* 258 A.D.2d 905, 685 N.Y.S.2d 381, 381 (App. Div. 4th Dep't. 1999)). However, the existence of an enforceable written contract precludes recovery for unjust enrichment. *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.,* 418 F.3d 168, 175 (2d Cir. 2005); *Clark-Fitzpatrick, Inc. v. Long Island R. Co.,* 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987). Although a plaintiff "can plead in the alternative such that he can challenge the validity of [a] contract *and* allege unjust enrichment" pursuant to Federal Rule of Civil Procedure 8(d) ("Rule 8(d)"),[3] the plaintiff cannot plead unjust enrichment in the alternative if he "fails to

---

[3] Rule 8(d)(2) and (3) provide that: "(2) . . . A party may set out [two] 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient. . . . (3) . . . A

challenge the validity of [the] contract . . . , and instead alleges breach of said otherwise enforceable contract." *Kamdem-Ouaffo v. PepsiCo, Inc.*, No. 14-cv-227, 2015 WL 1011816, at *13 (S.D.N.Y. Mar. 9, 2015).

The Moving Defendants argue that Plaintiffs' unjust enrichment claim cannot be sustained in the presence of a valid, enforceable Charter Agreement. DE 51-2, Moving Defs.' Op. Br., at 23. Plaintiffs respond that they are entitled to plead legal claims in the alternative pursuant to Rule 8(d), and that as the unjust enrichment claim is raised against only *Moss*, and not Classic Air, the claim may be pleaded in conjunction with the breach of contract claim against *Classic Air*. DE 51-3, Pls.' Ans. Br., at 17.

Both parties are correct. As neither party disputes the enforceability of the Charter Agreement, Plaintiffs cannot plead in the alternative an unjust enrichment claim against Classic Air pursuant to Rule 8(d). However, Plaintiffs have not done so; they have raised their unjust enrichment claim against Moss, who is not a party to the Charter Agreement. *See* DE 27, Am. Compl., at 11; DE 27-1, Ex. A, at 3. The Moving Defendants have not contended that Moss failed to benefit from the contract, or that Plaintiffs have not sufficiently pleaded the elements of an unjust enrichment claim. *See Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006). The Moving Defendants' motion to dismiss Count IV (unjust enrichment) against Moss is denied.

## III. CONCLUSION

For the reasons stated above, the Moving Defendants' motion to dismiss <u>Count II</u> (aiding and abetting claim against Moss and Classic Air), <u>Count III</u> (breach of contract claim against

---

party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(2) and (3).

Classic Air), and Count IV (unjust enrichment claim against Moss), of the amended complaint is denied in its entirety.

**SO ORDERED.**

          /s/ Sandra J. Feuerstein
          Sandra J. Feuerstein
          United States District Judge

Dated: March 8, 2016
       Central Islip, New York